IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIE L. HAASE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 04 C 3763 |
| v. | ) | |
| | ) | The Honorable William J. Hibbler |
| JO ANNE B. BARNHART, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jennie Haase applied to the Social Security Administration for Disability Insurance Benefits. After an administrative hearing, an Administrative Law Judge denied Haase's application on January 30, 2004. The Appeals Council declined to review Haase's application and Haase then filed this action to review the ALJ's decision.

On February 27, 2001, Haase fell and injured her back and knees while working as an overnight stocker at Wal-Mart. (Tr. at 141). Shortly after the injury, she received steroid injections in her back to help alleviate her pain, but the treatment proved ineffective. (Tr. at 133). Although still experiencing pain, Haase returned to light duty at Wal-Mart approximately a month after her fall. (Tr. at 197). Several months later, Haase's pain persisted, and an MRI revealed a mild disc protrusion in her lumbar spine as well as some mild annular disc bulges between her thoracic and lumbar spine. (Tr. at 137-38). In October 2001, Dr. Kevin Koutsky, an orthopedic surgeon, evaluated Haase and diagnosed chronic lower back pain. (Tr. at 141). Dr. Koutsky ordered a bone scan, recommended physical therapy, and prescribed Vioxx to treat her pain. (Tr. at 141). On

1

November 5, 2001, Dr. Koutsky reviewed the results of the bone scan, noted a previous traction injury in Haase's lumbar spine, and instructed her to stop work. (Tr. at 141).

On December 12, 2001, Dr. Koutsky ordered an MRI of each of Haase's knees, which revealed meniscus tears in both knees and some degeneration in her right knee. (Tr. at 135-36). Dr. Koutsky recommended arthroscopies for both knees. (Tr. at 188). About a week later, Haase received an epidural steroid injection in her lumbar spine. (Tr. at 133). And at the close of 2001, she underwent arthroscopic surgery on her right knee. (Tr. at 127-29).

For the next month, Haase received physical therapy for her back and knees, but Dr. Koutsky noted that Haase's lower back pain had not improved in the year following her injury. (Tr. at 175). A second MRI of Haase's back revealed degeneratic disc disease and disc bulging in her lumbar spine and early desiccation and disc bulging elsewhere in her lumbar spine. (Tr. at 112.). Dr. Koutsky again instructed that she remain off work. (Tr. at 173).

In March 2002, Haase saw a specialist in spinal surgery, Dr. Avi Bernstein. (Tr. at 166). Dr. Bernstein concluded that her injuries were related to deconditioning and were mostly postural, and recommended aggressive physical therapy. (Tr. at 166). On April 15, 2002, Dr. Koutsky again instructed Haase to remain off work. (Tr. at 173). On November 25, 2002, Dr. Koutsky released Haase to return to work, though Haase had resumed working at Wal-Mart on November 15, 2002. (Tr. at 184, 196).

During Haase's August 2003 hearing, only two witnesses testified: Haase and a vocational expert. (Tr. at 191). Haase testified that, at the time of the hearing, her back and left knee pain limited her to standing for only one hour before needing a break, walking approximately two city blocks, and lifting only 15 pounds. (Tr. at 198-201). Haase further testified that she takes

hydrocodone approximately two times a day, depending on her amount of pain. (Tr. at 201-02). However, because the hydrocodone makes her tired, Haase also testified that she takes Tylenol approximately twice a day. (Tr. at 202). Haase alleged that she had trouble sleeping because of her pain, that she wore a knee and back brace while working, and that she spends most of her free time at home lying down because of the pain. (Tr. at 202-04). At the time of the hearing, Dr. Koutsky had recommended a diskogram for her back and surgery for her left knee, but Haase's insurance would not pay for the recommended treatment. (Tr. at 203, 206-07).

Haase also testified that during the period of time when she was not working, she could not drive, could only sit for about 20 minutes and only stand for about 10-15 minutes before having to change positions, could not do household chores, and that she spent most of her time lying down. (Tr. at 207-08). During the period of time when she was not working, Haase attended physical therapy four times per week for six months. (Tr. at 209).

The vocational expert testified that if Haase's testimony about her limitations during the period of time Haase did not work were fully credited, work would be precluded (Tr. at 214). The ALJ then asked the expert to assess what work Haase could have performed if she had the limitations indicated by the state agency physicians. (Tr. at 212). The expert testified that Haase could have performed approximately 3,000 cashiering jobs with a sit/stand option with such limitations. (Tr. at 213-14). The expert stated that her conclusion was based upon Labor Department web sites and labor market surveys, but she did not have those available. (Tr. at 216). Consequently, the ALJ held the record open for the expert to provide the information upon which she relied for her opinion. (Tr. at 216).

3

The ALJ considered whether Haase was disabled for a closed period from November 5, 2001 to November 15, 2002, but determined that there was "no persuasive evidence that [Haase] could not have returned to work sooner or that she was precluded from all work during the period." (Tr. at 17). The first point the ALJ makes in support of this finding is that Haase's "back limitations were not such that they precluded all work given that [she] was working . . . on March 29, 2002 . . . ." (Tr. at 17). Next, the ALJ, without any explanation, stated that the state agency physicians conclusions, which suggested that Haase could stand for 6 hours in an 8 hour work day, were being adopted because they were consistent with the "medical and other evidence." (Tr. at 18). While still considering whether Haase was disabled between November 5, 2001 and November 15, 2002, the ALJ next ruled that Haase's objections to the labor market survey submitted by the vocational expert were moot because Haase had been working since November 15, 2002. (Tr. at 18). The ALJ briefly discussed Haase's April 24, 2002, visit to Dr. Koutsky, but never mentioned Dr. Koutsky's recommendation that Haase remain off work. (Tr. at 18). Nor did the ALJ discuss any of the diagnoses made by Dr. Koutsky or any of the treatment and medication prescribed by Dr. Koutsky. (Tr. at 18). Finally, the ALJ found that Haase's complaints of pain were not credible "in view of, especially, the medical evidence already summarized as well as her activities that included substantial gainful activity since November 2002." (Tr. at 18). The ALJ concluded that Haase was not disabled for any period of time. (Tr. at 19).

On review, a court should affirm the Commissioner's final decision if there is sufficient evidence on record that a reasonable mind might accept as adequate to support the same conclusions. *Perkins v. Chater*, 107 F. 3d 1290, 1296 (7th Cir. 1997). Although a court reviews the entire record, it may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the

ALJ. *Rice v. Barnhart*, 384 F. 3d 363, 369 (7th Cir. 2004). The ALJ, however, must rationally articulate the grounds for the decision and build an accurate and logical bridge from the evidence to the conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Here, the ALJ's opinion is so replete with omissions, misstatements, and error, that the ruling must be vacated and the case remanded for further consideration.

The very first point the ALJ makes in support of his conclusion is directly contrary to the record, and the error is of such magnitude that it alone warrants reversal of the ALJ's opinion. In finding that Haase was not disabled during the period between November 5, 2001, and November 15, 2002, the ALJ writes that "claimant's back limitations were not such that they precluded all work given that claimant was working when Dr. Avid [sic] J. Bernstein noted on March 29, 2002 her report of no relief in her back pain from physical therapy or epidural steroid injections . . . ." (Tr. at 17-18). But Dr. Bernstein's notes, upon which the ALJ relies, state unequivocally that Haase "remains off of work due to pain and she does not feel that she is able to perform her work activity." (Tr. at 166). This glaring misstatement of fact undermines the ALJ's entire opinion. Where the ALJ has patently misconstrued the evidence the Commissioner's decision must be vacated and the case remanded for a proper adjudication. *Scott v. Shalala*, 898 F. Supp. 1238, 1245 (N.D. Ill. 1995).

There are other problems with the ALJ's opinion. As Haase points out, nowhere does the ALJ discuss or even acknowledge that Dr. Koutsky held her off work for over a year. In fact, the ALJ ignores much of the evidence surrounding Dr. Koutsky's treatment of Haase — he fails to mention the medication Dr. Koutsky prescribed, the tests Dr. Koutsky performed, and the treatment plan Dr. Koutsky proposed. An ALJ may not ignore an entire line of evidence that is contrary to his findings, but that is precisely what the ALJ did here. *Henderson v. Apfel*, 179 F.3d 507, 514 (7th

5

Cir.1999). The Commissioner argues that Dr. Koutsky's recommendation that Haase refrain from work was relevant only to her work as a stocker. But nothing in the record or in the ALJ's opinion indicates that Dr. Koutsky's recommendation was so limited. On remand the ALJ must address the evidence surrounding Dr. Koutsky's treatment of Haase, including a more detailed explanation of whether it is consistent with the findings of the state agency physician's recommendations. Further, on remand, the ALJ must accord Dr. Koutsky's findings the weight required by controlling case law.

Next, the ALJ failed to follow Social Security Rule 96-7p in finding that Haase was not credible. Although an ALJ's credibility determinations normally are entitled to special deference, they must also be sufficiently specific to allow meaningful appellate review. *Brindisi v. Barnhart*, 315 F. 3d 783, 787 (7th Cir. 2003); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Social Security Rule 96-7p requires ALJ's to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p(4); *see also Steele*, 290 F.3d at 941-42 (ALJ must contain "specific reasons" for a credibility finding and may not simply invoke SSR 96-7p). Further, SSR 96-7p precludes an ALJ from disregarding an individual's statements about the intensity or persistence of pain or other symptoms in the record "solely because they are not substantiated by objective medical evidence." SSR 96-7p(4); *see also Indaranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). Here, the ALJ merely invoked SSR 96-7p and stated that Haase's allegations of pain were not credible in light of the medical evidence that he summarized. But the ALJ never summarized *any* of the evidence regarding Dr. Koutsky's treatment

of Haase from the time of her accident in February 2001 until April 2002. Nowhere does the ALJ ever identify any medical evidence that he believed to be inconsistent with her testimony. Further, ALJ stated that he found Haase not credible "in view of . . . her activities that included substantial gainful activity since November 2002." It is not clear what relevance Haase's return to work in November 2002 has upon her credibility — particularly when assessing whether she was disabled for the time period between November 5, 2001 and November 15, 2002. On remand, the ALJ must better articulate the reasons why he found Haase's allegations of pain during the November 5, 2001 to November 15, 2002 to be not credible.

In yet another puzzling error, the ALJ concludes that Haase's objections to the vocational expert's market survey are moot because Haase had been working since November 15, 2002. But the ALJ relied on the vocational expert's testimony to conclude that a hypothetical person with the limitations he found could perform work as a cashier. (Tr. at 19). A vocational expert's testimony about the number and type of jobs available to disability claimants must be reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910-11 (7th Cir. 2004). And because the ALJ actually did rely on the vocational expert's testimony regarding what types of work Haase could have performed during the period between November 5, 2001 and November 15, 2002, it was error for him not to rule on Haase's objections to the admissibility of the data submitted by the expert.

To state that the ALJ's opinion was sloppy is an understatement. It contains only sparse discussion of the medical treatment Haase received, it contains no discussion of Haase's treating physician's recommendations, it contains no explanation of credibility findings, it fails to rule on objections on mistaken assumptions of mootness, and it misstates the evidence in the record. The

7

opinion of the ALJ is vacated and the case is remanded to the Social Security Administration for further proceedings consistent with this order.

IT IS SO ORDERED.

_7/13/05_
Dated

_William J. Hibbler_ (signature)
The Honorable William J. Hibbler
United States District Court